F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

JUN 05 2019   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,

  - against -

GENESIS PETROLEUM, INC.,
TECHNIC MANAGEMENT, INC.,
GULDEN INC.,
2664 RT 112 REALTY CORP.,
607 STATION ROAD REALTY INC.,
1000 MOTOR PARKWAY CENTRAL ISLIP LLC,
616 BROADWAY LLC,
FREEPORT REALTY LLC,
199 E. SUNRISE HIGHWAY REALTY CORP.,
465 NASSAU ROAD REALTY CORP.,
CAMLICA, INC.,
KUCUKBEY CORP.,
NORTH COUNTRY ROAD REALTY LLC,
ELIZABETH NJPO LLC,
ELIZABETH NJPG LLC,
PERTH AMBOY NJPO LLC,
PERTH AMBOY NJPG LLC,
NEWARK NJPO LLC,
NEWARK NJPG LLC,
NORTH BERGEN NJPO LLC, and
NORTH BERGEN NJPG LLC,

                    Defendants.
-------------------------------------------------x

No. 19 Civ. _____

**COMPLAINT**

CV19   3340

SEYBERT, J.

SHIELDS, M.J.

The United States of America, by and through its attorney, Richard P. Donoghue, United States Attorney for the Eastern District of New York, acting on behalf of the United States Environmental Protection Agency ("EPA"), alleges for its complaint against Defendants: (a) Genesis Petroleum, Inc.; (b) Technic Management, Inc.; (c) Gulden Inc.; (d) 2664 RT 112 Realty Corp.; (e) 607 Station Road Realty Inc.; (f) 1000 Motor Parkway Central Islip LLC; (g) 616 Broadway LLC; (h) Freeport Realty LLC; (i) 199 E. Sunrise Highway Realty Corp.;

(j) 465 Nassau Road Realty Corp.; (k) Camlica, Inc.; (l) Kucukbey Corp.; (m) North Country Road Realty LLC; (n) Elizabeth NJPO LLC; (o) Elizabeth NJPG LLC; (p) Perth Amboy NJPO LLC; (q) Perth Amboy NJPG LLC; (r) Newark NJPO LLC; (s) Newark NJPG LLC; (t) North Bergen NJPO LLC; and (u) North Bergen NJPG LLC (collectively, "Defendants"), as follows:

## INTRODUCTION

1.      Service stations typically store gasoline in underground storage tanks ("USTs"). When operated conscientiously and monitored closely, USTs are a safe and effective means to store gasoline.  But when USTs are not subjected to basic operational safeguards, they can endanger the public and the environment, for example by leaking petroleum into the water supply, discharging toxic vapors into the air, or even triggering fires or explosions.

2.      Recognizing the harms that may arise from USTs and the need to guard against those harms through careful regulation, in 1984 Congress passed Subtitle I of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6691-6991m.  Subtitle I and its related regulations establish parameters for the regulation of USTs and maintenance, monitoring, and reporting obligations on the owners and operators of USTs in order to ensure that those USTs are operating safely.

3.      Defendants repeatedly violated regulations designed to protect the health and safety of the public and the environment at thirteen locations (the "Facilities")[1] within the Eastern District of New York and adjoining districts where Defendants either own USTs, operate them, or both.

---

[1] The gas stations are located at: (a) 2664 Route 112, Medford, New York (the "Medford Facility"); (b) 607 Station Road, Bellport, New York (the "Bellport Facility"); (c) 87 North Country Road, Miller Place, New York (the "Miller Place Facility"); (d) 616 Route 110 (Route 110 is also known as Broadway Road), Amityville, New York (the "Amityville Facility"); (e) 6077 Jericho Turnpike, Commack, New York (the "Commack Facility"); (f) 199 E. Sunrise Highway, Freeport, New York (the "Sunrise Highway Facility"); (g) 131 West Merrick Road, Freeport, New York (the "West Merrick Facility"); (h) 465 Nassau Road, Roosevelt, New York (the "Roosevelt Facility"); (i) 261 East Merrick Road, Freeport, New York (the "East Merrick Facility"); (j) 507 Bayway Avenue, Elizabeth, New Jersey (the

4.      In particular, at thirteen separate Facilities, Defendants violated Subtitle I of RCRA and its related regulations by failing to do one or more of the following: **(a)** install adequate overfill protection in USTs, in violation of 40 C.F.R. § 280.20(c)(1)(ii); **(b)** respond fully and properly to requests for information duly issued by EPA pursuant to EPA's information-gathering authority under Section 9005 of the Act, 42 U.S.C. § 6991d, through requests known as "Information Request Letters," ("IRLs"), in violation of  that statutory provision and 40 C.F.R. § 280.34; **(c)** cooperate fully with EPA inspectors during EPA inspections of UST  systems, in violation of 40 C.F.R. § 280.34; **(d)** provide adequate release detection[2] methods for tanks that routinely carry regulated substances, in violation of 40 C.F.R. §§ 280.40(a) and 280.41(a); **(e)** provide methods of release detection for pressurized piping systems, in violation of 40 C.F.R. §§ 280.41(b)(1)(ii) and 280.44; **(f)** maintain records of release detection, in violation of 40 C.F.R. §§ 280.34 and 280.45; **(g)** continue release detection for a temporarily closed UST containing a regulated substance(s), in violation of 40 C.F.R. § 280.70(a); **(h)** report a suspected release of a regulated substance(s), in violation of 40 C.F.R. §  280.50(c); **(i)** use an UST system made of or lined with materials that are compatible with the regulated substance(s) stored in such UST system, in violation of 40 C.F.R. § 280.32(a); and **(j)** maintain a mechanism for financial responsibility or maintain and provide evidence of a mechanism for financial responsibility, in violation of 40 C.F.R. § 280.93(a).

---

"Elizabeth Facility"); (k) 163 Fayette Street, Perth Amboy, New Jersey (the "Perth Amboy" Facility); (l) 66 Bloomfield Avenue (sometimes listed as 66-80 Bloomfield Avenue), Newark, New Jersey (the "Newark Facility"); and (m) 8012 Tonnelle Avenue, North Bergen, New Jersey (the "North Bergen Facility").

[2] The term "Release detection" is defined in 40 C.F.R. § 280.12 to mean "determining whether a release of a regulated substance has occurred from the UST system into the environment or into the interstitial space between the UST system and its secondary barrier or secondary containment around it."

5.      The United Sates brings this civil action pursuant to Section 9006 of the Solid

Waste Disposal Act, as amended by various laws, including RCRA, 42 U.S.C. § 6991e *et seq.*, for

civil penalties from Defendants pursuant to Section 9006(d)(2) of RCRA, 42 U.S.C. § 6991e(d)(2).

The United States also seeks an order enjoining Defendants to comply with the relevant statutory

and regulatory requirements for USTs and to perform any necessary remedial actions that may be

necessary in light of their past violations.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to Section

9006(a)(1) of RCRA, 42 U.S.C. § 6991e(a)(1), and 28 U.S.C. §§ 1331, 1345, and 1355.

7.      Venue is proper in this District pursuant to 42 U.S.C. § 6991e(a), and 28 U.S.C.

§§ 1391 and 1395 insofar as the violations occurred within this District.  To the extent certain

violations occurred outside of this District, such violations are properly asserted in this proceeding

under the pendent venue doctrine.

8.      The Regional Administrator of EPA, Region 2, has been duly delegated the

authority Congress vested in the Administrator of EPA in Section 9006(a)(1) of RCRA, 42 U.S.C.

§ 6991e(a)(1).

## STAUTORY AND REGULATORY GOVERNING PROVISIONS

9.      RCRA established a comprehensive federal regulatory program for the handling

and management of solid and hazardous wastes. 42 U.S.C. § 6901 *et seq.*

10.     On November 8, 1984, as part of the Hazardous and Solid Waste Amendments

("HSWA") of 1984 to RCRA, Congress created Subtitle I of RCRA, Regulation of Underground

Storage Tanks, 42 U.S.C. § 6991 *et seq.*  RCRA Subtitle I was created in response to the growing

number of groundwater contamination incidents caused by "regulated substances" (as defined

below) leaking from USTs. Section 9003(a) of RCRA, 42 U.S.C. § 6991b(a) directs the Administrator of EPA to promulgate regulations applicable to USTs, including regulations regarding leak detection systems, inventory control systems, release detection prevention, maintenance of records, and the closure of USTs, and maintaining evidence of financial responsibility.

11.     Pursuant to Section 9003 of RCRA, 42 U.S.C. § 6991b, EPA has promulgated regulations governing the installation, operation, maintenance and closure of underground storage tanks by the owners and operators of such tanks, and these regulations have been codified, in part, at 40 C.F.R. Part 280.

12.     Section 9005(a) of RCRA, 42 U.S.C. § 6991d(a), requires that, for purposes of, *inter alia*, taking any corrective action or enforcing the provisions of Subchapter IX of RCRA (42 U.S.C. §§ 6991-6991m), any owner or operator of an underground storage tank shall, upon request of any duly designated EPA officer, employee or representative, "furnish information relating to such tanks, their associated equipment, their contents, [and] conduct monitoring or testing[.]"

13.     Section 9006(a)(1) of RCRA, 42 U.S.C. § 6991e(a)(1), provides that, in part, "whenever on the basis of any information the Administrator [of EPA] determines that any person is in violation of any requirement of this subchapter [Subchapter IX of RCRA, 42 U.S.C. §§ 6991-6991m], the Administrator may . . . commence a civil action in the United States district court in which the violation occurred for appropriate relief, including a temporary or permanent injunction."

14.     Section 9006(d)(1) of RCRA, 42 U.S.C. § 6991e(d)(1), provides that "[a]ny owner or operator who knowingly fails to notify or submits false information pursuant to section 6991a(a)

of this title [Section 9002(a) of RCRA, 42 U.S.C. 6991a(a)] shall be subject to a civil penalty not to exceed $10,000 for each tank for which notification is not given or false information is submitted."

15.     Section 9006(d)(2)(A) of RCRA, 42 U.S.C. § 6991e(d)(2)(A) provides, in part, that "[a]ny owner or operator of an underground storage tank who fails to comply with [] any requirement or standard promulgated by the Administrator [of EPA] under section 6991b of this title [Section 9003 of RCRA, 42 U.S.C. § 6991b] shall be subject to a civil penalty not to exceed $10,000 for each tank for each day of violation."

16.     Under authority of the Federal Civil Penalty Inflation Adjustment Act of 1990, as amended through 2015, EPA promulgated regulations, known as the Civil Monetary Penalty Inflation Adjustment Rule, codified at 40 C.F.R. Part 19, that, *inter alia*, increase the maximum penalty that might be obtained pursuant to Section 9006(d) of RCRA, 42 U.S.C. § 6991e(d), to $16,000 for any violation occurring after January 12, 2009, and to $23,426 for any violation that occurred after November 2, 2015 for which penalties are assessed on or after January 15, 2018 (83 Fed. Reg. 1190 (January 10, 2018)).

17.     The requirements of 40 C.F.R Part 280 apply to all owners and operators of an UST system. *See* 40 C.F.R. § 280.10(a) . . . ."

18.     40 C.F.R. § 280.30 requires each owner and operator of an UST to cooperate fully with inspections, monitoring and testing conducted by the implementing agency as well as requests for document submission, testing, and monitoring…pursuant to section 9005 [of RCRA, 42 U.S.C. §6991d], and for owners and operators of UST systems to maintain information, including documentation of [r]ecent compliance with release detection requirements [set forth in 40 C.F.R.] § 280.45.

19.     40 C.F.R. § 280.40 requires that each owner and operator of a UST must provide a method or combination of methods of release detection that can detect a release from any portion of the tank and connected underground piping that routinely carries product.  The requirements for release detection in the USTs are found at 40 C.F.R. § 280.41, which requires the owner and operator to monitor USTs monthly using any one of the methods listed in 40 C.F.R. § 280.43(d) through (i).  These methods include Automatic Tank Gauging ("ATG"), vapor monitoring groundwater monitoring, interstitial monitoring, and statistical inventory reconciliation.  The requirements for release detection in the connected piping are found at 40 C.F.R. § 280.41, which requires that any pressurized piping connected to the USTs must be equipped with an automatic line leak detector (ALLD), and have an annual line tightness test or have monthly monitoring.  The requirements for the ALLD are found at § 280.44(a) and includes annual testing of the operation of the ALLD.  The requirements for monthly monitoring are found at § 280.44(c).

20.     The regulations requiring owners and operators of USTs to report, investigate and confirm releases or suspected releases of regulated substances at the UST site are codified at 40 C.F.R. Part 280, Subpart E, 40 C.F.R. §§ 280.50–280.53.

21.     The regulations setting forth the requirements pertaining to out-of-service UST systems and to closure of such systems, both temporary and permanent closures, are codified 40 C.F.R. Part 280, Subpart G, 40 C.F.R. §§ 280.70–280.74.

22.     The regulations setting forth the requirements pertaining to financial responsibility of owners or operators of petroleum underground storage tanks, including the requirement that such owners or operators "must demonstrate financial responsibility for taking corrective action and for compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of petroleum underground storage tanks" and the requirement

that such owners or operators "must maintain evidence of all financial assurance mechanisms used to demonstrate financial responsibility under" Subpart H, are codified at 40 C.F.R. Part 280, Subpart H, 40 C.F.R. §§ 280.90–280.116.

23.     The failure to comply with a regulation set forth in 40 C.F.R. Part 280 constitutes a "violation of any requirement of this subchapter [Subchapter IX, 42 U.S.C. §§ 6991–6991i]" for purposes of Section 9006 of RCRA, 42 U.S.C. § 6991e, and also constitutes a "fail[ure] to comply with [] any requirement or standard promulgated by the Administrator [of EPA] under section 6991b of this title [Section 9003 of the Act]" for purposes of Section 9006(d)(2)(A) of RCRA, 42 U.S.C. § 6991e(d)(2)(A).

24.     For any violation of a regulation set forth in 40 C.F.R. Part 280, the violator(s) is, *inter alia*, subject to the civil penalty set forth in Section 9006(d)(2) of RCRA, 42 U.S.C. § 6991e(d)(2), as amended.

## FACTUAL BACKGROUND

25.     As set forth below, the corporate entities are related in that, among other things, they have overlapping officers and shareholders, and at times share common corporate addresses and telephone numbers.  Adnan Kiriscioglu ("Kiriscioglu") has, at various times, been actively involved with every facility, and many of the corporate entities, named in this action.

26.     Kiriscioglu is an individual residing in the Eastern District of New York, with his primary residence located in Port Jefferson (Suffolk County), New York.

27.     Kiriscioglu was during the periods of time relevant to the matters alleged below, the sole principal (*e.g.*, either shareholder, officer, director or member) of each of the Defendants.

Kiriscioglu managed, directed or conducted decisions about environmental compliance at the Facilities at issue in this case.

28.     Having been repeatedly made aware of applicable UST requirements, Kiriscioglu, and his agents, employees, and contractors, failed to institute and effect the appropriate policies, programs, protocol and procedures to ensure compliance with applicable UST requirements at the Facilities.

29.     Kiriscioglu and his employees, agents, and contractors manage the Facilities (and have managed said facilities for the periods of time relevant to the matters alleged herein) and operate the USTs (and have operated the USTs for the periods of time relevant to the matters alleged herein) located at the Facilities, including arranging for service and testing of the USTs and their associated equipment, identifying itself on the invoices under the names "NJPO" or "NJPO Group" and "US Petroleum."

30.     "US Petroleum" is a trademark owned by Pinnacle Petroleum, Inc., a corporation formed in New York State and owned by Kiriscioglu.

31.     When Kiriscioglu did not directly make decisions regarding environmental compliance, he instructed and trained his employees to make decisions in his stead, most notably, his on-site managers Ezgi Kiriscioglu and James (Yusuf) Oksum (also spelled as "Oaksum" and "Oxum") who reported directly to him.

32.     Defendants Genesis Petroleum, Inc. and Technic Management, Inc. shared operator responsibilities for many of the Facilities.

EPA's Requests for Information (IRLs)

33.     Pursuant to 42 U.S.C § 6991d and 40 C.F.R. § 280.34, EPA sent, by certified mail, RCRA 9005 IRLs to Kiriscioglu with regard to USTs located on properties of, *inter alia*, the Defendants, which IRLs have never been answered or which were answered incompletely.

34.     On or about January 17, 2013, EPA sent, via certified mail, return receipt requested, an IRL (the "January 2013 IRL") to Kiriscioglu, individually, as an owner or operator of USTs, and in his capacity as "an officer, partner, general agent, managing agent or other official capacity" of a business entity, demanding information for the period between the period February 1, 2008 and February 1, 2013, regarding, *inter alia*, federally regulated UST systems that: (a) he individually owned and or operated, and (b) were owned or operated by any business entity in which he served as an officer, partner, general agent, managing agent or in other official capacity. The January 2013 IRL further sought information about facilities where such UST systems were located.

35.     On behalf of Kiriscioglu, his daughter Ezgi Kiriscioglu provided a response to the January 2013 IRL.  The response failed to respond in full to the January 2013 IRL.  The response was certified by Kiriscioglu as "President," presumably of Gulden, Inc. and Camlica, Inc.

36.     On or about February 19, 2014, EPA sent, via certified mail, return receipt requested, an IRL to Kiriscioglu  (the "February 2014 IRL"), requesting the names, addresses, and telephone numbers of all entities that own the properties located at, *inter alia*: 199 E. Sunrise Highway, Freeport, NY; 261 E. Merrick Road, Freeport, NY; 465 Nassau Road, Roosevelt, NY; 607 Station Road, Bellport, NY; 87 North Country Road., Miller Place, NY; 66 Bloomfield Avenue., Newark, NJ; 131 West Merrick Road., Freeport, NY; 2664 Route 112, Medford, NY;

616 Broadway/Rte 110, Amityville, NY; 503 [sic] Bayway, Elizabeth, NJ; 163 Fayette St., Perth Amboy, NJ.

37.     The February 2014 IRL requested that Kiriscioglu provide the month, day and year in which any owner acquired ownership of each property the IRL listed.  In response, Kiriscioglu's attorney provided only a list of properties in which Kiriscioglu had an ownership interest in either the operating company or ownership company. These companies either presently or previously operated gasoline service stations with USTs.  Kiriscioglu failed to provide the month, day, or year in which the owners acquired such ownership, as required by the IRL.

38.     The February 2014 IRL also requested that Kiriscioglu provide the names, addresses and telephone numbers of all person(s) who owned/operated the USTs associated with the entities known as, *inter alia*: Adnan Kiriscioglu, 199 E. Sunrise Highway Realty Corp.; 465 Nassau Road Realty Corp.; Black Rock Desert LLC.; Camlica, Inc.; Elizabeth NJPO, LLC; Newark, [sic] NJPG, LLC; North Bergen NJPG, LLC; Perth Amboy NJPG, LLC; 2664 Route 112 Realty Corp.; 607 Station Road Realty, Inc.; Elizabeth NJPG, LLC; Gulden, Inc.; Newark NJPO, LLC; North Bergen NJPO, LLC; Technic Management, Inc.; Genesis Petroleum, Inc.; Freeport Realty, LLC; 1000 Motor Parkway Central Islip, LLC; Perth Amboy NJPO, LLC and 616 Broadway, LLC. Further, EPA requested that Kiriscioglu provide the month, day and year in which all owners/operators began operating the USTs.

39.     In response, through his attorney, Kiriscioglu submitted only partial information. Kiriscioglu provided only the owner/operator information for Genesis Petroleum.  He failed to provide any dates for when Genesis Petroleum began operations.

40.     The February 2014 IRL also requested that Kiriscioglu describe and provide documentation regarding the legal relationship between the owners of the properties listed in the IRL and the owners or operators of the USTs.

41.     Through his attorney, Kiriscioglu provided a description of the legal relationship between the owners of the properties and UST owners/operators for a few of the properties the IRL listed.  Kiriscioglu provided no information for any of the other properties.

42.     The February 2014 IRL also requested that Kiriscioglu provide a copy of each facility's UST registration questionnaire and a copy of the current registration certification; provide the day, month, and year that each UST was installed (and in the event that the installation date was unknown, state so or give best estimation); provide the capacity of each UST and indicate the regulated substances[3] currently stored, or which were stored, in each UST; provide the construction material of tank and piping for each UST system, and if available the name of the manufacturer of the underground tank; and indicate whether the fuel pipes were  pressurized or suctioned.

43.     In response, Kiriscioglu failed to provide any general information about any of the USTs associated with the entities listed in the IRL. Kiriscioglu also failed to provide the state registration certificates for any of the USTs.

----

[3] The term "regulated substance" is defined in Section 9001(7), 42 U.S.C. § 6991(7), to mean "(A) any substance defined in section 9601(14) of this title [42 U.S.C. § 9601(14)] (but not including any substance regulated as a hazardous waste under subchapter III [42 U.S.C. §§ 6921–6939e], and (B) petroleum." It is also defined in 40 C.F.R. § 280.12, to mean "(a) Any substance defined in section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) of 1980 [42 U.S.C. § 6910(14)] (but not including any substance regulated as a hazardous waste under subtitle C [42 U.S.C. §§ 6921–6939e], and (b) Petroleum, including crude oil or any fraction that is liquid at standard conditions of temperature and pressure (60 degrees Fahrenheit and 14.7 pounds per square inch absolute).  The term 'regulated substances' includes but is not limited to petroleum and petroleum-based substances comprised of a complex blend of hydrocarbons derived from crude oil through processes of separation, conversion, upgrading, and finishing, such as motor fuels, jet fuels, distillate fuel oils, residual fuel oils, lubricants, petroleum solvents, and used oils."

44.     The February 2014 IRL also sought information from Kiriscioglu about leak detection testing for USTs at the entities listed in the IRL. The IRL requested information about either monthly monitoring or monthly inventory control and tank tightness testing required every five years. In the event that the leak detection method was ATG, the request asked Kiriscioglu to state the manufacturer and model of the ATG along with a description of its capabilities. Further, Kiriscioglu was asked to provide documentation demonstrating that the leak detection had been implemented during the previous 12 months. EPA further requested that if inventory control and tank tightness testing had been used, Kiriscioglu was to provide copies of all reconciliation worksheets for the previous 12 months.  In addition, if any of the USTs contained pressurized fuel pipes, EPA requested that Kiriscioglu provide documentation that the fuel pipes were equipped with an automatic line leak detector. EPA further requested that Kiriscioglu describe the type of leak detector used, and if applicable, provide copies of records showing that the line leak detectors had been tested during the previous 12 months and either show that the fuel pipes had had an annual line tightness test, which is able to detect a 0.1 gallon per hour leak rate at one and one-half times the operating pressure, or had had monthly monitoring.  Kiriscioglu was asked to provide this information and the accompanying documents for all USTs associated with the entities listed in the IRL.

45.     To date, Kiriscioglu has failed to provide the required testing documents for the USTs owned or operated by a number of entities, including the following: 199 E. Sunrise Highway Realty Corp.; 465 Nassau Road Realty Corp.; Camlica, Inc.; Newark NJPG, LLC; North Bergen NJPG, LLC; Perth Amboy NJPG, LLC; 2664 Route 112 Realty Corp.; 607 Station Road Realty, Inc.; Elizabeth NJPG, LLC; Gulden Inc.; North Bergen NJPO LLC; Technic Management, Inc.;

Genesis Petroleum, Inc.;  Freeport Realty LLC; 1000 Motor Parkway Central Islip LLC; and

616 Broadway LLC.

46.     The February 2014 IRL also requested information from Kiriscioglu regarding UST

closures at the entities listed in the IRL.  More specifically, EPA requested information on whether

any UST system located on the properties associated with the entities listed in the IRL (which

include the Facilities) were temporarily closed or out of service between February 1, 2009 and the

date of his response to the IRL. In the event that any of the USTs were temporarily closed or out

of service, EPA requested that Kiriscioglu provide the following information about each of the

closed USTs: (a) the date the UST was temporarily closed or taken out of service; (b) the period

of time it was closed or non-operational; and (c) whether the UST system was empty, as defined

by 40 C.F.R. § 280.70(a), during the period of temporary closure. If any of the UST systems had

been permanently closed, or if there had been a change in service from regulated to non-regulated

substances, EPA requested that Kiriscioglu provide the date of permanent closure or change in

service, and a copy of the site assessment report required by 40 C.F.R. § 280.72.

47.     To date, Kiriscioglu has failed to provide any information on UST closures for any

of the USTs associated with the entities listed in the IRL.

48.     The February 2014 IRL also requested documentation to demonstrate compliance

with the financial responsibility requirements of 40 C.F.R. Part 280, Subpart H, for any UST

system located on the properties associated with the entities listed in the IRL (which include the

Facilities), including the requirements for compensating third parties for bodily injury and property

damage, caused by releases arising from the operation of any petroleum UST. Kiriscioglu has

failed to provide the required information for a number of entities, including the following: 199 E.

Sunrise Highway Realty Corp.; 465 Nassau Road Realty Corp.; Camlica, Inc.; Newark, [sic]

NJPG, LLC; Perth Amboy NJPG, LLC; 2664 Route 112 Realty Corp.; 607 Station Road Realty, Inc.; Elizabeth NJPG, LLC; Gulden, Inc.; North Bergen NJPO, LLC; Technic Management, Inc.; Genesis Petroleum, Inc.; Freeport Realty, LLC; 616 Broadway, LLC and 1000 Motor Parkway Central Islip, LLC.

49.    The February 2014 IRL further requested that, for the time period between February 1, 2008 and the date of the response to this IRL, Kiriscioglu provide a complete list of federally-regulated UST systems of which the entities listed in the IRL, their parents, affiliates, subsidiaries, partners, or any associated entities, were or had been the owner or operator. The listed entities included virtually all of the Defendants.

50.    In addition, the February 2014 IRL requested that, for the time period between February 1, 2008 and the date of the response to this IRL, Kiriscioglu provide a complete list of federally-regulated UST systems "of which any business entity in which Adnan Kiriscioglu serves or has served as an officer, partner, general agent, managing agent, representative, or other official capacity, is or has been the owner or operator." Kiriscioglu failed to provide this information for the following entities listed in the IRL: 199 E. Sunrise Highway Realty Corp.; 465 Nassau Road Realty Corp.; Camlica, Inc.; Newark, NJPG, [sic] LLC; North Bergen NJPG, LLC; Perth Amboy NJPG, LLC; 2664 Route 112 Realty Corp.; 607 Station Road Realty, Inc.; Elizabeth NJPG, LLC; Gulden, Inc.; Technic Management, Inc.; Freeport Realty, LLC; 1000 Motor Parkway Central Islip, LLC and 616 Broadway, LLC.

51.    The February 2014 IRL also requested that, for, *inter alia*, each of the federal regulated UST systems identified Kiriscioglu provide the addresses where each of the UST systems were or had been located, the name under which the facility was or had been conducting business, the number of UST systems located at each such facility, the type of UST systems (*e.g.,*

steel tanks and piping, fiberglass tanks and piping), the corporate and franchise branding, the UST state-(or implementing local government) issued registration number(s), and the effective date for each registration. Kiriscioglu has failed to provide this information for any of the UST systems.

52.     As described above, the EPA has sent IRLs to Kiriscioglu, in his capacity as a principal of corporate entities that have owned or operated USTs for the relevant periods at the facility locations identified in the February 2014 IRL and included the Facilities at issue in this case. The responses received were inadequate, incomplete, lacked a certification attesting to their accuracy, and failed to address many of the facilities for which information had been sought.

## DEFENDANTS

Genesis Petroleum, Inc.

53.     Genesis is a corporation organized pursuant to and existing under the laws of the State of New York, with a mailing address at 8012 Tonnelle Avenue, North Bergen, New Jersey 07047 (the address of the North Bergen Facility).

54.     The legal address of Genesis is 2664 Route 112, Medford, New York 11763 (the address of the Medford Facility) and the service of process address is listed as 55 Maple Ave Suite 102, Rockville Centre, New York 11570.

55.     Genesis operated (by itself or in conjunction with other defendants) during the relevant periods the USTs located at:  (a) 2664 Route 112, Medford, New York (the "Medford Facility"); (b) 87 North Country Road, Miller Place, New York (the "Miller Place Facility"); (c) 616 Route 110 Amityville, New York (the "Amityville Facility"); (d) 6077 Jericho Turnpike, Commack New York (the "Commack Facility"); (e) 131 W. Merrick Road, Freeport, New York (the "West Merrick Facility"); (f) 199 East Sunrise Highway, Freeport, New York (the "Sunrise

Highway Facility"); (g) 465 Nassau Road, Roosevelt, New York (the "Roosevelt Facility"); and (h) 261 East Merrick Road, Freeport, New York (the "East Merrick Facility").

Technic Management, Inc.

56.     Technic is a corporation organized pursuant to and existing under the laws of the State of New York.

57.     The service of process address for Technic is 2664 Route 112, Medford, New York 11763 (the address of the Medford Facility). Its principal executive office is 8012 Tonnelle Avenue, North Bergen, New Jersey 07047 (the address of the North Bergen Facility)

58.     Technic is in control of, and has responsibility for, the daily operation of the facility's USTs.

Gulden Inc.

59.     Gulden is a corporation organized pursuant to and existing under the laws of the State of New York, with a service of process address at 8012 Tonnelle Avenue, North Bergen, New Jersey 07047 (the address of the North Bergen Facility).

60.     Gulden is the operator of the USTs at the East Merrick Facility.

2664 RT 112 Realty Corp.

61.     2664 RT 112 Realty Corp. is a corporation organized pursuant to and existing under the laws of the State of New York.  The service of process address for this defendant is 2664 Route 112, Medford, New York 11763 (the address of the Medford Facility).

62.     2664 RT 112 Realty Corp. is the owner of the Medford Facility including its USTs.

607 Station Road Realty Inc.

63.     607 Station Road Realty, Inc. is a limited liability company organized pursuant to and existing under the laws of the State of New York. The service of process address for this defendant is 100 Plaza Drive, Suite 100, Secaucus, New Jersey 07094.

64.     607 Station Road Realty, Inc. is the owner of the USTs at the Bellport Facility and also owns said facility.

1000 Motor Parkway Central Islip LLC

65.     1000 Motor Parkway Central Islip LLC is a limited liability company organized pursuant to and existing under the laws of the State of New York.  The service of process address for this defendant is 2664 Route 112, Medford, New York 11763 (the address of the Medford Facility).

66.     1000 Motor Parkway Central Islip LLC is the owner of Amityville Facility and its USTs.

616 Broadway LLC

67.     616 Broadway LLC is a limited liability company organized pursuant to and existing under the laws of the State of New York.

68.     The NYS Corporation Database lists the Medford address (2664 Route 112, Medford, New York 11763) for 616 Broadway LLC, with a filing date of January 10, 2011, and identifies a previous actual name for this entity, 510 SUFFOLK AVENUE BRENTWOOD LLC, with a filing date of December 2, 2009.  The service of process address for 616 Broadway LLC is also 2664 Route 112, Medford, NY, 11763.

69.     The most recent (February 2012) UST registration application and the certificate observed by inspectors at an April 2013 inspection of the Amityville Facility list 616 Broadway

18

LLC, with a mailing address at 2664 Route 112, Medford, New York (the address of the Medford Facility), as the owner of the USTs at the Amityville Facility.

70.     616 Broadway LLC is doing business as 1000 Motor Parkway, Central Islip, LLC.

71.     616 Broadway LLC is the owner of Amityville Facility, including its USTs.

Freeport Realty LLC

72.     Freeport Realty LLC is a limited liability company organized pursuant to, and existing under the laws of the State of Nevada.  The service of process address for Freeport Realty LLC is 8012 Tonnelle Avenue, North Bergen, NJ (the address of the North Bergen Facility).

73.     Kiriscioglu is the managing member of Freeport Realty LLC.

74.     Since January 2008, Freeport Realty LLC has been the owner of the West Merrick Facility, including its USTs.

199 E. Sunrise Highway Realty Corp.

75.     The 199 E. Sunrise Highway Realty Corp. is a corporation organized pursuant to and existing under the laws of the State of New York. The service of process address is 199 E. Sunrise Highway, Freeport, New York, 11520.

76.     The 199 E. Sunrise Highway Realty Corp. is the owner the Sunrise Highway Facility, including its USTs.

465 Nassau Road Realty Corp.

77.     The 465 Nassau Road Realty Corp. is the operator of the USTs at the Roosevelt Facility.

78.     The 465 Nassau Road Realty Corp. is the owner of Roosevelt Facility and its USTs.

79.     The 465 Nassau Road Realty Corp is the owner of the North Bergen Facility, including its USTs.

80.     The 465 Nassau Road Realty Corp. is a corporation organized under the laws of the State of New York. The service of process address for 465 Nassau Road Realty Corp. is 8012 Tonnelle Avenue, North Bergen, New Jersey, 07047 (the address of the North Bergen Facility).

Camlica, Inc.

81.     Camlica, Inc. is a corporation organized pursuant to and existing under the laws of the State of New York. The service of process address for Camlica, Inc. is 2664 Route 112, Medford, New York, 11763 (the address of the Medford Facility).

82.     Camlica, Inc. is the operator of the USTs at the Medford Facility.

Kucukbey Corp.

83.     The Kucukbey Corp is, and has been for the periods of time relevant to the matters alleged herein, a corporation organized under the laws of the State of New York.

84.     The mailing address the Kucukbey Corp. has on file with the New York Department of State is 90 Merrick Avenue, Suite 510, East Meadow, New York 11554.

85.     The Kucukbey Corp. is the owner of the USTs at the Commack Facility.

North Country Road Realty LLC

86.     The North Country Road Realty LLC is, and has been since December 2015, a limited liability company organized pursuant to and existing under the laws of the State of New York.  The service of process address for this defendant listed by the New York State Department of State is "Adnan Kiriscioglu" at the address of the North Bergen Facility, and the registered agent is listed as "Adnan Kiriscioglu" at the address of the Miller Place Facility.

87.     The North Country Road Realty Corp. is the owner of the Miller Place Facility, including its USTs.

Elizabeth NJPO LLC

88.     The Elizabeth NJPO LLC was for the periods of time relevant to the matters alleged herein, a Nevada limited liability company with a managing officer, Black Rock Desert LLC., the mailing address of which is 7260 W. Azure Drive Suite 140-212 Las Vegas, NV 89130.

89.     The Black Rock Desert LLC is a Nevada limited liability company with a single member, Kiriscioglu.  Kiriscioglu is and has been the single member of Black Rock Desert for the periods of time relevant to the matters alleged herein.

Elizabeth NJPG LLC

90.     The registered agent for Elizabeth NJPG is GG International, 500 N Rainbow Blvd, Suite 300, Las Vegas, Nevada 89107.

91.     Kiriscioglu is the officer/manager for the Elizabeth NJPG LLC, the mailing address of which is GG International, 7260 W. Azure Drive, Suite 140-212, Las Vegas, Nevada 89130.

92.     The Elizabeth NJPG LLC is the owner of the USTs located at the Elizabeth Facility.

Perth Amboy NJPO LLC

93.     The Perth Amboy NJPO LLC is the operator of the USTs located at the Perth Amboy Facility.  Kiriscioglu is the registered agent of Perth Amboy NJPO LLC, the mailing address of which is 8012 Tonnelle Avenue, North Bergen, New Jersey, 07047.

94.     Perth Amboy NJPO is a Nevada limited liability company with a managing officer, Black Rock Desert LLC.

95.     Perth Amboy NJBO LLC is the operator of the USTs at the Perth Amboy Facility.

Perth Amboy NJPG LLC

96.     Perth Amboy NJPG LLC's registered agent is GG International, located at 500 N Rainbow Blvd, Suite 300, Las Vegas, Nevada 89107.

97.     Perth Amboy NJPG LLC is a Nevada limited liability company in default as of April 2013 and its registered agent is GG International, located at 500 N Rainbow Blvd, Suite 300, Las Vegas, Nevada 89107.

98.     Kiriscioglu is the officer/manager for the Perth Amboy NJPG LLC, the mailing address of which is GG International, 7260 W. Azure Drive, Suite 140-212, Las Vegas, Nevada 89130.

99.     The Perth Amboy NJPG LLC is the owner of the the Perth Amboy Facility and its USTs.

Newark NJPO LLC

100.    The Newark NJPO LLC was for the periods of time relevant to the matters alleged herein, a Nevada limited liability company with a managing member, Black Rock Desert LLC.

101.    The Newark NJPO LLC is the operator of the USTs at the Newark Facility.

Newark NJPG LLC

102.    The Newark NJPG LLC was Nevada limited liability company currently with its entity status revoked as of September 30, 2015.

103.    The registered agent for the Newark NJPG LLC is GG International, 500 N Rainbow Blvd, Suite 300, Las Vegas 89107.

104.    Kiriscioglu is the officer/manager of the Newark NJPG LLC, which has a mailing address at GG International, located at 7260 W. Azure Drive, Suite 140-212, Las Vegas, Nevada 89130.

105.    The Newark NJPG LLC was the owner of the USTs located at the Newark Facility.

North Bergen NJPO LLC

106.     The North Bergen NJPO LLC is, and has been for the periods of time relevant to the matters alleged herein, the operator of the USTs at the North Bergen Facility.

107.     The North Bergen NJPO LLC was, for the periods of time relevant to the matters alleged herein, a Nevada limited liability company, with a managing officer the Black Rock Desert LLC.

108.     The registered agent for the North Bergen NJPO LLC is GG International, the address of which is 500 N Rainbow Blvd, Suite 300, Las Vegas 89107.

North Bergen NJPG LLC

109.     The North Bergen NJPG LLC is, and has been for the periods of time relevant to the matters alleged herein, the owner of the USTs at the North Bergen Facility.

110.     The North Bergen NJPG LLC is a Nevada limited liability company, and Kiriscioglu is its managing officer. The address for Kiriscioglu as managing member is c/o GG International, 7260 W. Azure Drive, Suite 140-212, Las Vegas, Nevada 89130.

111.     The registered agent for the North Bergen NJPG LLC is GG International, with a mailing address of 500 N Rainbow Blvd, Suite 300, Las Vegas 89107.

**DEFENDANTS' STATUS UNDER RCRA**

112.     Each of the Defendants, more specifically identified in paragraphs 53 through 111, above has been, for the relevant period, a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), Section 9001(5) of the Act, 42 U.S.C. § 6991(5), and 40 C.F.R. § 280.12.

113.     Each of the Defendants, as more specifically identified in paragraphs 53 through 111, above, has been for the periods of time relevant to the matters alleged herein, an "owner" or

"operator" of an underground storage tank within the meaning of sections 9001(3) and (4) of RCRA, 42 U.S.C. §§ 6991(3) and (4) [respectively], and 40 C.F.R. § 280.12.

## DEFENDANTS' FACILITIES

114.    Eight of the Facilities are located within the boundaries of the federally designated Nassau-Suffolk Sole Source Aquifer. The Perth Amboy Facility is located within the boundaries of the New Jersey Coastal Plain Sole Source Aquifer.  Sole Source Aquifers, among other criteria, are aquifers that supply at least fifty percent (50%) of the drinking water consumed in the area within the Sole Source Aquifer boundaries. The Sole Source Aquifer designation is a tool to protect drinking water supplies in areas with few or no alternative sources to the groundwater resource, and where, if contamination occurred, providing an alternative source would be extremely expensive.  Moreover, each of the Roosevelt, Commack, and Bellport Facilities is located within a New York State Department of Health ("NYSDOH") -delineated Source Water Protection Area ("SWPA").  A Source Water Protection Area is the area within the contribution zone to a public water or community water supply intake or well (designated by a state using an approved methodology pursuant to requirements of the Safe Drinking Water Act) where there is heightened vulnerability to contamination.

The Medford Facility

115.    Defendants involved with the Medford Facility are Genesis, Technic, 2664 RT 112 Realty Corp. and Camlica, Inc. (collectively, the "Medford Facility Defendants").

116.    The Medford Facility is an automobile fueling station and an automotive maintenance center.

117.    As of March 25, 2013, the Medford Facility had three 25,000-gallon USTs, which were installed in 2011, and two 10,000-gallon USTs, which were installed in 1994.  All of the

USTs were constructed of double walled ("DW") Fiberglass Reinforced Plastic ("FRP").  All of the USTs store or have stored for the periods of time relevant to the matters alleged herein, petroleum products which constitute regulated substances, and utilize, and have utilized pressurized piping.

118.    Since 2010, there has been at least one significant release of a regulated substance from an UST(s) at the Medford Facility that resulted in soil, groundwater, and off-site contamination.

119.    During EPA's initial inspection of this facility, conducted on March 25, 2013, duly designated representatives of EPA observed several violations.

120.    At the March 2013 inspection, the EPA representatives (*i.e.* the EPA inspectors) requested release detection records for the pressurized piping from the on-site facility representative. No such records were provided after the inspection.

121.    During the March 2013 inspection, the EPA inspectors were able to observe automatic line leak detectors ("ALLD") only on the piping associated with two of the five USTs (on Tanks 4 and 5).

122.    During the March 2013 inspection, the EPA inspectors could not access the sump, where the ALLD would normally be housed, on each of the other three USTs (Tanks 1, 2, and 3), nor could the on-site representative provide, upon EPA request, ALLD testing records of any kind for the piping associated with Tanks 1, 2, and 3.

123.    At least as of the time of the March 2013 inspection, the piping associated with Tanks 1, 2, and 3 was not equipped with ALLDs in violation of 40 C.F.R. § 280.41(b)(1)(i).

124.    Further, records provided to the EPA inspectors for the piping associated with Tanks 4 and 5 by the on-site representative demonstrated that the annual testing of the operation

of the ALLD required by 40 C.F.R. § 280.44(a) had not been performed anytime within the last year.

125.    During the March 2013 inspection, the EPA inspectors were unable to observe any annual testing of the operation of the ALLD, annual line tightness test, or any monthly monitoring for the pressurized piping associated with any of the USTs, nor were they provided, upon their having made such a request, evidence of line tightness tests having been conducted as an alternative to monthly monitoring, in violation of 40 C.F.R. § 280.41(b)(1)(ii).

126.    During the March 2013 inspection, the EPA inspectors requested but were not provided with evidence of the existence of a financial responsibility mechanism for the USTs at the Medford Facility. The failure to have a mechanism for financial responsibility in place for the USTs at the facility and documentation of financial responsibility is a violation of 40 C.F.R. §§ 280.93(a) and 280.111.

127.    A duly-designated EPA representative inspected the Medford Facility for a second time on June 11, 2015.

128.    At the June 2015 inspection, the USTs described in paragraph 117, above, remained operational. The EPA inspector noted that the facility used electronic interstitial monitoring as the primary method of release detection for the five USTs and requested records of release detection monitoring for the UST systems (tanks and piping) (pursuant to 40 C.F.R. §§ 280.34 and 280.45) from the on-site representative.

129.    At the June 2015 inspection, the on-site representative provided the EPA inspector with records of release detection for only five out of the previous 12 months.  The records for July 2014 through January 2015 were missing.

130.   A duly-designated EPA inspector attempted to conduct another inspection of the Medford Facility on June 24, 2016. The EPA inspector was met by on-site gasoline attendants, who were uncooperative and refused to provide their names or answers to questions about the USTs or to open the sumps to allow the inspector to conduct a visual/physical inspection.

131.   The on-site representatives' failures to cooperate with an EPA inspection are violations of 40 C.F.R § 280.34, a provision that requires full cooperation with an EPA inspection.

132.   The EPA inspector was able during the June 2016 inspection to confirm by personal observation that the five USTs were still operating and that three USTs used electronic interstitial monitoring as the primary method of release detection.

133.   No records of monitoring for either the tanks or lines, nor test results for the ALLDs, nor evidence of the existence of financial responsibility mechanisms were provided to the EPA inspector, despite being requested, in violation of 40 C.F.R. §§ 280.45, 280.44(a), 280.93(a), and 280.111.

134.   Such failure to have cooperated with an EPA inspection is a violation of 40 C.F.R § 280.34, a provision, which requires full cooperation with an inspection.

The Bellport Facility

135.   Defendants involved with the Bellport Facility are, and have been for the time periods relevant to the matters alleged herein, Technic and 607 Station Road Realty, Inc. (collectively the "Bellport Facility Defendants").

136.   The Bellport Facility is, and has been for the time periods relevant to the matters alleged herein, an automobile fueling station and an automotive maintenance center.

137.    As of March 25, 2013, the Bellport Facility had two 6,000-gallon USTs and one 8,000 gallon UST.  All of the USTs were constructed of FRP, and each was equipped with pressurized piping. The USTs were installed in 1992 and stored regulated substances.

138.    Duly-designated EPA inspectors first inspected the Bellport Facility on March 25, 2013 and observed several violations.

139.    During the March 2013 inspection of the Bellport Facility, the inspectors found no physical evidence that any federally-approved method of release detection was in use for any UST, in violation of 40 C.F.R. § 280.41(a).

140.    During the March 2013 inspection of the Bellport Facility, the inspectors noted that no approved method of release detection for a pressurized piping system was in use at the Bellport Facility, as no annual line tightness testing or annual testing of the ALLDs had been performed since November 26, 2010, and no monthly monitoring of pressurized piping was being performed, in violation of 40 C.F.R. §§ 280.41(b)(1)(ii) and 280.44(a).

141.    During the March 2013 inspection of the Bellport Facility, the EPA inspectors requested, but the on-site representative did not provide, records to demonstrate the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R § 280.93 and 40 C.F.R. §280.111.

142.    A duly-designated EPA representative inspected the Bellport Facility for a second time on June 11, 2015.

143.    During the June 2015 inspection of the Bellport Facility, at which time the USTs described in paragraph 137 remained operational, the EPA inspector observed evidence that the facility was conducting monthly monitoring of the tanks using the ATG method, and monthly monitoring of the associated pressurized piping using the electronic interstitial monitoring method.

28

144.     During the June 2015 inspection of the Bellport Facility, the EPA inspector, upon request, was only provided records of monthly release detection monitoring for nine out of the previous 12 months. No records were provided of release detection for the tanks or piping for July, September, and October 2014, in violation of 40 C.F.R § 280.45.

145.     During the June 2015 inspection of the Bellport Facility, following a request, the on-site representative also did not provide records to demonstrate the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R § 280.93 and 40 C.F.R. § 280.111.

146.     EPA inspected the Bellport Facility for a third time on June 24, 2016, at which time the USTs described in paragraph 137 remained operational.

147.     During the June 2016 inspection of the Bellport Facility, the EPA inspector again observed a failure to monitor release detection for the USTs monthly, as well as a failure to maintain records of annual line tightness testing and records of monthly pressurized piping monitoring, in violation of 40 C.F.R. § 280.45. Specifically, the on-site facility representative did not provide these required records of release detection for the period from June 2015 through October 2015 or for the months of December 2015, February 2016, and March 2016.

148.     The EPA inspector observed that there was no provision for an acceptable method of release detection for the pressurized piping because although they had ALLDs installed, there was: (a) no evidence of annual testing of the operation of the ALLD; and (b) no evidence of monthly monitoring of the pressurized piping for the periods of July, September and October of 2014 (and no annual tightness testing covering those periods).

149.     During the June 2016 inspection of the Bellport Facility, the on-site representative at the facility did not provide, when asked by the EPA inspector, evidence of the existence of a

financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. § 280.93 and 40 C.F.R. § 280.111.

The Miller Place Facility

150.    Defendants involved with the Miller Place Facility are Genesis, Technic, and North Country Road Realty, LLC. (collectively the "Miller Place Facility Defendants").

151.    The Miller Place Facility is an automobile fueling station and an automotive maintenance center.

152.    As of June 24, 2016, the Miller Place Facility had three USTs: one 10,000-gallon (containing regular gasoline), one 8,000-gallon (containing premium [also referred to as super] gasoline) and one 6,000-gallon (containing diesel fuel).  All of the USTs were constructed of FRP, were installed in 1991, and stored petroleum products, which constitute regulated substances.

153.    A duly-designated EPA representative inspected the Miller Place Facility on June 24, 2016.

154.    During the June 2016 inspection of the Miller Place Facility, the on-site gasoline attendant was uncooperative, claiming to know very little about the operation of the station and the release detection equipment and refusing to open the sumps to allow the inspector to conduct a visual/physical inspection.  The failure to cooperate with an inspection is a violation of 40 C.F.R § 280.34.

155.    During the June 2016 inspection of the Miller Place Facility, notwithstanding the facility attendant's refusal to permit a visual/physical inspection, he authorized access to the facility's Veeder Root ATG, which had been installed in January 2016.

156.    During the June 2016 inspection of the Miller Place Facility, the EPA inspector requested, but the attendant did not provide, records of release detection for the USTs at the facility

or of the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. §§ 280.45, 280.93(a) and 280.111.

157.    During the June 2016 inspection of the Miller Place Facility, the EPA inspector further noted that the ATG device was in alarm status and indicated a yellow "liquid warning" in the premium sump and a red "fuel alarm" in the diesel sump. The inspector learned from the operator of the adjacent auto maintenance center that the ATG had been flashing red for at least three weeks prior to the inspection, and that the yellow light had been flashing intermittently since the ATG's installation in January 2016.

158.    ATG alarms are intended to alert UST operators to potential releases.

159.    No suspected release at the Miller Place facility had been reported to the state implementing agency (the New York State Department of Environmental Conservation, or "NYSDEC") at any time prior to the June 2016 inspection, in violation of 40 C.F.R. § 280.50(c).

The Amityville Facility

160.    Defendants involved with the Amityville Facility 616 Route 110 are Genesis, Technic, 1000 Motor Parkway Central Islip LLC and 616 Broadway LLC (collectively the "Amityville Facility Defendants").

161.    The Amityville Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station.

162.    As of April 17, 2013, the Amityville Facility had three 10,000-gallon USTs and a 4,000-gallon UST (containing diesel fuel).  All four USTs are constructed of FRP, were installed in 1993, and stored regulated substances.  All of the USTs utilize pressurized piping, two of which (containing regular gasoline) are manifolded and share a single piping system.

163.   During the April 2013 inspection of the Amityville Facility, the inspectors observed, *inter alia*, that the facility was not employing a federally-approved method of release detection for any tank, and that there were no records of monthly monitoring of the tanks in violation of 40 C.F.R. § 280.41(a).

164.   During the April 2013 inspection of the Amityville Facility, the EPA inspectors determined that the turbine sump which served also as the spill bucket for the 4,000-gallon diesel-storing UST contained 18 inches of water with a one-inch sheen of product on top.  This condition interfered with the ability of the sump to properly prevent spills during delivery, in violation of 40 C.F.R. § 280.20(c).

165.   During the April 2013 inspection of the Amityville Facility, the EPA inspectors further noted that the facility had no provision for an acceptable method of release detection for the pressurized piping, in that, although they had ALLDs installed, there was: (a) no evidence of annual testing of the operation of the ALLD; and (b) no evidence of monthly monitoring of the pressurized piping.  All the ALLDs had been due for testing on or before March 6, 2013.  The failure to have an acceptable method of release detection for the pressurized piping was a violation of 40 C.F.R. § 280.44(a).

166.   At the time of the April 2013 inspection (but not necessarily limited to such time) of the Amityville Facility, the facility appeared to rely on line tightness testing as the release detection method for its three pressurized piping systems.  Specifically, the three pressurized lines were due to have an annual line tightness test or to implement an allowable method of monthly release detection monitoring of the pressurized lines on or before March 6, 2013.  The failure to maintain records of either option constitutes a violation of 40 C.F.R. § 280.41(b)(1)(ii).

167.   During the April 2013 inspection of the Amityville Facility, the EPA inspectors requested, but were not provided with, records of the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. § 280.93(a) and 40 C.F.R. § 280.111.

168.   A duly-designated EPA representative inspected the Amityville Facility on June 11, 2015, at which time the USTs remained operational.

169.   At the time of the June 2015 inspection of the Amityville Facility (but not necessarily limited to such time), the facility continued to have no apparent method of any monthly monitoring of its tanks, in violation of 40 C.F.R. §280.41(a).

170.   During the June 2015 inspection of the Amityville Facility, following a request, the on-site representative failed to produce evidence of the existence of mechanism of financial responsibility for the USTs at the facility in violation of C.F.R. § 280.93 and § 280.111.

171.   A duly-designated EPA representative inspected the Amityville Facility again on February 18, 2016, at which time the USTs remained operational.

172.   At the time of the February 2016 inspection of the Amityville Facility, the tanks were being monitored monthly for releases via electronic interstitial monitoring; however, records of this monitoring method were only made available for August 2015.  Records for the months of February 2015 through July 2015 and for the months of September 2015 through February 2016 were missing, in violation of 40 C.F.R. § 280.45.

173.   At the time of the February 2016 inspection of the Amityville Facility, there were no records of monthly monitoring for the period August 26, 2015 through the day of the inspection, and there were no records of annual line tightness tests that covered this period, (the last annual

line tightness test having been performed a year before the beginning of the period), in violation of 40 C.F.R. § 280.45.

174.     During the February 2016 inspection of the Amityville Facility, the EPA inspector requested of James (Yusuf) Oksum (identified in paragraph 31) that a full year of the required records of monthly release detection for the USTs (required to be maintained pursuant to 40 C.F.R. §§ 280.34 and 280.45) be submitted to EPA after the inspection.  No such records were provided after the inspection.

175.     During the February 2016 inspection of the Amityville Facility, the EPA inspector asked Oksum for evidence of the existence of a financial responsibility mechanism for the USTs at the facility. No such records were provided at the inspection, or at any time thereafter, in violation of 40 C.F.R. § 280.93 and 40 C.F.R. § 280.111.

176.     On February 28, 2017, a representative/employee of the Suffolk County (New York) Department of Health Services ("SCDOHS") inspected the Amityville Facility and found the USTs were operational.

177.     At the time of the February 2017 inspection of the Amityville Facility, records for the one-year period of detection records for the USTs and their associated pressurized piping were requested but none were provided, in violation of 40 C.F.R. § 280.45.

178.     At the time of the February 2017 inspection, the Amityville Facility failed to provide a method of release detection for the pressurized piping due to the failure of the facility to provide any  results of any annual ALLD operations testing, in violation of 40 C.F.R. § 280.44(a).

The Commack Facility

179.     Defendants involved with the Commack Facility are Genesis, Technic, and Kucukbey Corp. (collectively the "Commack Facility Defendants").

180.    The Commack Facility is an automobile fueling station.

181.    As of March 28, 2013, the Commack Facility had an 8,000-gallon UST and a 4,000-gallon UST, both of which are FRP and equipped with pressurized piping. The USTs were installed in 1993 and stored regulated substances.

182.    During the March 2013 inspection of the Commack Facility, the EPA inspectors observed an external overfill alarm, but the alarm was not functional, and therefore, not capable of alerting the operator when the tank became 90% full.

183.    During the March 2013 inspection of the Commack Facility, the EPA inspectors observed a failure to maintain records of release detection monitoring, in violation of 40 C.F.R. §§ 280.34 and 280.45. The inspectors requested but were not provided with records of release detection for the USTs and for their associated pressurized piping.

184.    During the March 2013 inspection of the Commack Facility, the EPA inspectors requested from the on-site representative, who identified himself as an employee of Kiriscioglu, that the required release detection records demonstrating performance of monthly release detection for the tanks and piping (required to be maintained pursuant to 40 C.F.R. §§ 280.34 and 280.45) be submitted to EPA after the inspection.  No such records were provided to EPA at any time thereafter.

185.    During the March 2013 inspection of the Commack Facility, the EPA inspectors requested but were not provided with any evidence of the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. § 280.93(a) and 40 C.F.R. § 280.111.

186.    A duly designated EPA representative inspected the Commack Facility again on June 11, 2015, at which time the USTs remained operational.

187.    At the time of the June 2015 inspection of the Commack Facility, the external overfill alarm remained non-functional, in violation of 40 C.F.R. § 280.20(c).

188.    During the June 2015 inspection of the Commack Facility, the EPA inspector requested but was not provided with records of monthly release detection for the tanks or piping for the previous 12 months, in violation of both 40 C.F.R. §§ 280.34 and 280.45.

189.    During the June 2015 inspection of the Commack Facility, the EPA inspector also requested the most recent annual ALLD test results. No such test had been performed since July 3, 2013, in violation of 40 C.F.R. § 280.44.

190.    A duly designated EPA representative inspected the Commack Facility again on June 24, 2016, at which time the USTs remained operational.

191.    During the June 2016 inspection of the Commack Facility, the EPA inspector found evidence of multiple violations at the facility.

192.    At the time of the June 2016 inspection of the Commack Facility, the most recent record of an ALLD test was dated July 3, 2013. The failure to conduct a more recent ALLD test was a violation of 40 C.F.R. § 280.44(a), which requires annual ALLD tests to be performed.

193.    During the June 2016 inspection of the Commack Facility, the inspector requested from the on-site representative, Steve Vichman, but was not provided with, records indicating that monthly release detection monitoring for the tanks and piping was being conducted, a violation of 40 C.F.R. §§ 280.34 and 280.45.

194.    During the June 2016 inspection of the Commack Facility, the EPA inspector requested but was not provided with evidence of the existence of a current financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. §§ 280.93 and 280.111.

36

195.     The EPA inspector requested from Mr. Vichman that the required release detection records demonstrating performance of monthly release detection for the tanks and piping (required to be maintained pursuant to 40 C.F.R. §§ 280.34 and 280.45) be submitted to EPA after the inspection.  No such records were provided to EPA at any time thereafter.

The Sunrise Highway Facility

196.     Defendants associated with the Sunrise Highway Facility are Genesis, Technic, and 199 E. Sunrise Highway Realty Corp. (collectively the "Sunrise Highway Defendants").

197.     The Sunrise Highway Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station.

198.     As of April 17, 2013, the facility had three separate tanks, two of which were compartmentalized, as follows: (a) a 20,000-gallon UST containing regular gasoline; (b) a compartmentalized UST consisting of a 6,000-gallon compartment holding premium gasoline and a 14,000-gallon compartment holding diesel fuel; and (c) a second compartmentalized UST consisting of an 8,000-gallon compartment holding E85 (a blend of ethanol and gasoline) fuel and a 6,000-gallon compartment containing biodiesel.  All five tanks are constructed of FRP and are equipped with pressurized piping. The tanks were installed in 2013 and stored regulated substances.

199.     Duly designated EPA representatives inspected the Sunrise Highway Facility on April 17, 2013.

200.     During the April 2013 inspection of the Sunrise Highway Facility, the EPA inspectors requested but were not provided with evidence of the existence of a financial responsibility mechanism for the USTs at the facility, in violation of 40 C.F.R. §§ 280.93(a) and 280.111.

201.   A duly designated EPA representative inspected the Sunrise Highway Facility again on June 2, 2015, at which time the USTs remained operational.

202.   During the June 2015 inspection of the Sunrise Highway Facility, James (Yusuf) Oksum (identified in paragraph 31) was on-site as a representative of Genesis. The EPA inspector observed multiple violations.

203.   At the time of the June 2015 inspection of the Sunrise Highway Facility, inspectors observed that E85 was being stored in one of the compartments of the compartmentalized fiberglass UST.  E85 is known to have compatibility problems with fiberglass USTs. Also, there was visible deterioration of the fiberglass in that compartment of the UST. This deterioration further indicated that the UST was not compatible with the stored substances in violation of 40 C.F.R. § 280.32(a).

204.   the EPA inspector observed that E85 was being stored in one of the compartments of the compartmentalized UST.  In addition, the inspector observed visible degradation of the fiberglass on the surface of the UST.  Because E85 can be incompatible fiberglass, this deterioration indicated that the UST was not compatible with the stored substance in violation of 40 C.F.R. § 280.32(a).

205.   At the time of the June 2015 inspection of the Sunrise Highway Facility, there was no evidence of a method of release detection being in place for pressurized lines associated with the 14,000-gallon diesel fuel UST, in violation of 40 C.F.R. § 280.41(b)(1)(ii).  Liquid status sensors for the diesel (L10) sump were indicating out of service, revealing that these sensors were not operational. Moreover, there was no evidence of an annual line tightness test having been performed for the piping associated with this 14,000-gallon diesel fuel UST.

206. During the June 2015 inspection of the Sunrise Highway Facility, the EPA inspector requested records demonstrating 12 months of release detection for the UST but was provided with only nine months of records; records for September 2014 and January and February 2015 were missing. Subsequent to the inspection, records for January and February 2015 were submitted to EPA, but no records for September 2014 were ever produced. The failure to have records of release detection for the month of September 2014 is a violation of 40 C.F.R. § 280.45.

207. During the June 2015 inspection of the Sunrise Highway Facility, the EPA inspector requested evidence that an ALLD test had been conducted for each of the five pressurized lines. Subsequent to this inspection ALLD test results were provided for four of the lines; no such records were provided for the piping associated with the 14,000-gallon UST storing diesel fuel. The failure to perform such ALLD test is a violation of 40 C.F.R. § 280.44(a).

West Merrick Facility

208. Defendants involved with the West Merrick Facility are Genesis, Technic, and Freeport Realty LLC (collectively the "West Merrick Facility Defendants").

209. The West Merrick Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station and an automotive maintenance center.

210. As of April 18, 2013, the West Merrick Facility had three 8,000-gallon USTs. All three USTs are constructed of FRP and equipped with pressurized piping. The USTs were installed in 1990 and stored regulated substances.

211. During EPA's initial inspection of the West Merrick Facility, conducted on April 18, 2013, the duly-designated EPA inspectors observed several violations.

212. During the April 2013 inspection of the West Merrick Facility, the EPA inspectors requested but were not provided with records of release detection monitoring required by 40 C.F.R.

§§ 280.34 and 280.45.  The inspectors requested, but were not provided with records of release detection for two of the USTs and their associated piping, nor were the inspectors able to retrieve these data from the ATG. The EPA inspectors requested all of the required release detection testing records demonstrating performance of monthly release detection for the USTs and their associated pressurized piping, records that are required to be maintained pursuant to 40 C.F.R. § 280.34 and 280.45.  The West Merrick Facility Defendants failed to provide any such records at any point after the inspection.

213.    During the April 2013 inspection of the West Merrick Facility, the EPA inspectors requested but were not provided with evidence of the existence of a mechanism of financial responsibility for the USTs at the facility, in violation of 40 C.F.R. § 280.93(a) and 40 C.F.R. § 280.111.

214.    A duly-designated EPA inspector conducted a second investigation of the West Merrick facility on June 2, 2015, at which time the USTs remained operational. During the June 2015 inspection, the EPA inspector requested 12 months of release detection records for the USTs but was provided with only eight non-sequential months of records; the records for June 2014, September 2014, December 2014, and May 2015 were missing, in violation of 40 C.F.R. § 280.45.

215.    Subsequent e-mail submissions from Egzi Kiriscioglu (identified in paragraph 31), failed to provide the missing release detection records.

The Roosevelt Facility

216.    Defendants involved with the Roosevelt Facility are Genesis, Technic, and 465 Nassau Road Realty Corp. (collectively the "Roosevelt Facility Defendants").

217.   The Roosevelt Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station that is (and has been) operated under the name US Petroleum.

218.   As of June 2, 2015, the Roosevelt Facility had two 8,000-gallon USTs and two 2,500-gallon USTs, all of which are FRP and equipped with pressurized piping. The USTs were installed in 1990 and stored regulated substances.

219.   A duly-designated EPA representative inspected the Roosevelt Facility on June 2, 2015 and observed multiple violations.

220.   During the June 2015 inspection of the Roosevelt Facility, the EPA inspector requested evidence of the conduct of timely ALLD test results, which were to be performed by March 13, 2014, for all four lines (*i.e.* the pressurized piping associated with each UST). No records were provided during the inspection; however, subsequent to the inspection Ezgi Kiriscioglu (identified in paragraph 31) submitted records of timely ALLD tests for three of the lines. No such records were submitted for the piping associated with one of the two 2,500-gallon USTs containing diesel fuel. The failure to conduct timely ALLD testing is a violation of 40 C.F.R. § 280.44(a).

221.   During the June 2015 inspection of the Roosevelt Facility, the EPA inspector requested records demonstrating 12 months of monthly release detection for the USTs at the facility. The on-site facility representative was able to provide only 10 months of release detection records for the USTs; the release detection records for March and April, 2015 were missing. Subsequent to the inspection, Ezgi Kiriscioglu (identified in paragraph 31) submitted the release detection records for March 2015. Release detection records for April 2015 have not been provided at any time, in violation of 40 C.F.R. § 280.45.

222.    During the June 2015 inspection of the Roosevelt Facility, the EPA inspector reviewed printouts from the ATG which noted that the liquid status sump sensor L2 for the pressurized piping associated with an UST containing regular gasoline had been in alarm for the months of April and May 2015. The printout for this UST on the day of inspection showed the same alarm status. ATG alarms are intended to alert UST operators to potential releases.

223.    As a result of the alarm, during the June 2015 inspection of the Roosevelt Facility, the EPA inspector requested access to the sump for the regular gasoline UST (Tank 2) to investigate the current condition of the sump and to observe what might have been causing the alarm.  The on-site facility representative refused to open this sump.

224.    No suspected release at the Roosevelt Facility had/has been reported to NYSDEC at any time prior to the June 2015 inspection or thereafter, in violation of 40 C.F.R. § 280.50(c).

East Merrick Facility

225.    Defendants involved with the East Merrick Facility are Genesis, Technic, and Gulden (collectively the "East Merrick Defendants").

226.    The East Merrick facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station that is (and has been) operated under the name US Petroleum, and an automotive maintenance center.

227.    As of April 18, 2013, the East Merrick Facility had three 10,000-gallon USTs constructed of FRP. Two of the three tanks were manifolded and therefore the USTs at the facility had only two lines of pressurized piping.  All three USTs were installed in 1996 and stored regulated substances.

228.    During an April 2013 inspection of the East Merrick Facility, duly designated EPA inspectors found that the USTs at the facility (and indeed the facility itself) were out of service.

Each of the USTs was open and accessible to the inspectors and contained more than three feet of petroleum products. While an ATG was connected to the USTs, it was disabled.

229.     At the time of the April 2013 inspection of the East Merrick Facility, no method of release detection was in place for the out-of-service USTs, in violation of 40 C.F.R. § 280.70(a).

The Elizabeth Facility

230.     Defendants involved with the Elizabeth Facility are Technic, Elizabeth NJPO LLC and Elizabeth NJPG LLC (collectively the "Elizabeth Facility Defendants").

231.     The Elizabeth Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station.

232.     As of April 15, 2013, the Elizabeth Facility had one 12,000-gallon UST and two 10,000- gallon tanks, all of which are FRP and equipped with pressurized piping. The USTs were installed in 1992 and stored regulated substances.

233.     During an inspection of the Elizabeth Facility, conducted on April 15, 2013, the duly-designated EPA representatives observed several violations.

234.     During the April 2013 inspection of the Elizabeth Facility, the EPA inspectors found that all three USTs lacked overfill protection.  There was no obvious means of overfill protection in any of the three USTs, in violation of the requirements specified in 40 C.F.R. § 280.20(c)(1)(ii).

235.     During the April 2013 inspection of the Elizabeth Facility, the EPA inspectors discovered a lack of timely ALLD testing, as the latest such test, which that was required to be performed by no later than April 12, 2013, had not taken place, in violation of 40 C.F.R. § 280.44(a).

236.    During the April 2013 inspection of the Elizabeth Facility, the EPA inspectors discovered a lack of annual line tightness testing, as the latest such test, which was required to be performed by no later than April 12, 2013, had not taken place, and the EPA inspectors also discovered that there was no method for monthly monitoring for the pressurized piping (the latter method constituting the alternative to the annual line tightness testing), in violation of 40 C.F.R. § 280.41(b)(1)(ii).

237.    During the April 2013 inspection of the Elizabeth Facility, the EPA inspectors also discovered a lack of monthly release detection for the USTs at the facility, in violation of 40 C.F.R. § 280.41(a).

The Perth Amboy Facility

238.    Defendants involved with the Perth Amboy Facility are Technic, Perth Amboy NJPO LLC, and Perth Amboy NJPG LLC (collectively the "Perth Amboy Facility Defendants").

239.    The Perth Amboy Facility is an automobile fueling station.

240.    As of April 15, 2013, the Perth Amboy Facility had one 12,000-gallon UST and two 10,000 gallon USTs, each of which is made of FRP and equipped with pressurized piping. All three USTs were installed in 1996 and stored regulated substances.

241.    During EPA's initial inspection of the Perth Amboy Facility, conducted on April 15, 2013, the duly-designated EPA representatives observed multiple violations.

242.    During the April 2013 inspection of the Perth Amboy Facility, the EPA inspectors requested records demonstrating 12 months of monthly release detection for the pressurized piping with which the three USTs were equipped. In response, the inspectors were given ALLD and line tightness test results from November 1, 2010. Annual tests were therefore due by no later than November 1st of the following year (2011) and every year thereafter.

243.    At the time of the April 2013 inspection of the Perth Amboy Facility, no testing of release detection had been conducted since 2010 for the pressurized piping associated with the USTs at this facility, in violation of 40 C.F.R. §§ 280.41(b)(1)(ii) and 280.44(a).

The Newark Facility

244.    Defendants involved with the Newark Facility are Technic, Newark NJPO LLC and Newark NJPG LLC (collectively the "Newark Facility Defendants").

245.    The Newark Facility is, and has been for the periods of time relevant to the matters alleged herein, an automobile fueling station.

246.    As of April 15, 2013, the facility had one 12,000-gallon UST and two 10,000-gallon USTs, each of which is FRP and equipped with pressurized piping. All three USTs were installed in 1997 and stored regulated substances.

247.    During EPA's initial inspection of the Newark Facility, facility, conducted on April 15, 2013, the duly-delegated EPA representatives noted that the facility appeared to employ electronic interstitial monitoring as its method of release detection.

248.    During the April 2013 inspection of the Newark Facility, the EPA inspectors requested but were not provided with, records of 12 months of release detection, in violation of 40 C.F.R. § 280.45.

The North Bergen Facility

249.    Defendants associated with the North Bergen Facility are Technic, North Bergen NJPO LLC, and North Bergen NJPG LLC (collectively the "North Bergen Facility Defendants").

250.    The North Bergen Facility is an automobile fueling station.

251.    As of June 7, 2016, the North Bergen Facility had three 12,000-gallon USTs, all of which were FRP and equipped with pressurized piping. The USTs were all installed in 2002 and stored regulated substances.

252.    On June 7, 2016, a duly designated EPA representative conducted an inspection of the North Bergen facility and noted multiple violations. During said inspection, Kiriscioglu was the on-site representative for the facility.

253.    During the June 2016 inspection of the North Bergen Facility, the EPA inspector requested records demonstrating performance of monthly release detection for the USTs, required to be maintained pursuant to 40 C.F.R. §§ 280.34 and 280.45. Only three months of records were made available for the EPA inspector's review.

254.    Kiriscioglu told the EPA inspector that the remaining months of records were stored off-site and would be provided subsequent to the inspection. No such records were provided at any time, in violation of 40 C.F.R. § 280.45.

255.    During the June 2016 inspection of the North Bergen Facility, the ATG release detection system was in alarm. A printout from the ATG demonstrated that sensors for the UST containing diesel fuel were displaying a high liquid alarm and a sensor for the UST containing regular gasoline indicated "fuel alarm." The inspector brought the status of the alarms to the attention of Kiriscioglu, who replied that he had called his contract operator to check the alarms.

256.    Subsequent to the June 2016 inspection of the North Bergen Facility, the EPA inspector contacted the implementing agency, the New Jersey Department of Environmental Protection ("NJDEP"), regarding the status of the USTs at the North Bergen Facility, as the high liquid alarm the EPA inspector observed during his June 2016 inspection was of concern.

257.    On June 29, 2016, NJDEP inspectors visited the North Bergen Facility and found that the sensors were still in alarm but had not been investigated, as required by 40 C.F.R. § 280.50(c).

## FIRST CLAIM FOR RELIEF

Failure to Provide Overfill Prevention System
(Against Genesis, Technic, and the Amityville Facility, Commack Facility and Elizabeth Facility Defendants)

258.    Paragraphs 1 through 256 are realleged and incorporated herein by reference.

259.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, KUCUKBEY CORP., ELIZABETH NJPO LLC and ELIZABETH NJPG LLC were required to have adequate overfill prevention system for the new UST systems that they own(ed) or operate(d). Each day of each failure by a defendant to provide an adequate overfill prevention system for the new UST systems is a violation of 40 C.F.R. § 280.20(c).

260.    GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, KUCUKBEY CORP., ELIZABETH NJPO LLC and ELIZABETH NJPG LLC failed to comply with 40 C.F.R. § 280.20(c) because they did not have adequate overfill prevention systems for the new UST systems that they own(ed) or operate(d) at the facilities located at the following addresses: 616 Route 110, Amityville, New York; 6077 Jericho Turnpike, Commack, New York; and 507 Bayway Avenue, Elizabeth, New Jersey.

## SECOND CLAIM FOR RELIEF

Failure to Respond to EPA Information Requests
(Against ALL DEFENDANTS)

261.    Paragraphs 1 through 256 are realleged and incorporated herein by reference.

262.     Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., GULDEN INC., 2664 RT 112 REALTY CORP., 607 STATION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, FREEPORT REALTY LLC, 199 E. SUNRISE HIGHWAY REALTY CORP., 465 NASSAU ROAD REALTY CORP., CAMLICA, INC., KUCUBEY CORP., NORTH COUNTRY ROAD REALTY LLC, ELIZABETH NJPO LLC, ELIZABETH NJPG LLC, PERTH AMBOY NJPO LLC, PERTH AMBOY NJPG LLC, NEWARK NJPO LLC, NEWARK NJPG LLC, NORTH BERGEN NJPO LLC and NORTH BERGEN NJPG LLC were required to respond fully and properly to requests for information, relating to UST systems they own(ed) or operate(d), issued by the EPA. Each day of each failure by a defendant to respond fully and properly to requests for information, relating to UST systems they own(ed) or operate(d), issued by the EPA is a violation of Section 9005 of RCRA, 42 U.S.C. § 6991d and 40 C.F.R. § 280.34.

### THIRD CLAIM FOR RELIEF

Failure to Cooperate Fully with EPA Inspectors During Inspection of UST Systems
(Against Genesis, Technic, the Medford Facility and Miller Place Facility Defendants)

263.     Paragraphs 1 through 256 are realleged and incorporated herein by reference.

264.     Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC. and NORTH COUNTRY ROAD REALTY LLC were required to fully cooperate with EPA inspectors during any EPA inspection of facilities at which the UST systems they own(ed)/operate(d) at the following addresses: 2664 Route 112, Medford, New York and 87 North Country Road, Miller Place, New York.  Each day of each failure by a defendant to fully cooperate with EPA inspectors during any EPA inspection of facilities at which the UST systems they own(ed)/operate(d) were located is a violation of 40 C.F.R. § 280.34.

## FOURTH CLAIM FOR RELIEF

Failure to Provide Release Detection for USTs
(Against Genesis, Technic, and the Bellport Facility, Amityville Facility, and Elizabeth Facility
Defendants)

265.    Paragraphs 1 through 256 are realleged and incorporated herein by reference.

266.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC,
607 STATION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC,
616 BROADWAY LLC, ELIZABETH NJPO LLC and ELIZABETH NJPG LLC were required
to provide an adequate release detection method, or combination of methods, that can detect a
release from any UST that they own(ed) or operate(d) and which UST(s) routinely contains(ed)
product. Each day of each failure by a defendant provide an adequate release method is a violation
of 40 C.F.R. § 280.41(a).

267.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC,
607 STATION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC,
616 BROADWAY LLC, ELIZABETH NJPO LLC and ELIZABETH NJPG LLC failed to
comply with the requirements of 40 C.F.R. § 280.41(a) because they did provide an adequate
release detection method, or combination of methods that can detect a release from the USTs that
they own(ed) or operate(d), and which routinely contain(ed) product, at the facilities at the
following locations: 607 Station Road, Bellport, New York; and 507 Bayway Avenue, Elizabeth,
New Jersey.

## FIFTH CLAIM FOR RELIEF

Failure to Provide a Method of Release Detection for Pressurized Piping
(Against Genesis, Technic, and the Medford Facility, Bellport Facility, Amityville Facility,
Sunrise Highway Facility, Elizabeth Facility and Perth Amboy Facility Defendants)

268.    Paragraphs 1 through 256 are realleged and incorporated herein by reference.

269.     Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC., 607 STATION ROAD REALTY INC., GULDEN INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, FREEPORT REALTY LLC, 199 E. SUNRISE HIGHWAY REALTY CORP., ELIZABETH NJPO LLC, ELIZABETH NJPG LLC, PERTH AMBOY NJPO LLC, and PERTH AMBOY NJPG LLC were required to provide a method of release detection for the pressurized piping associated with the USTs that they owned or operated, which included: (a) equipping the pressurized piping with an ALLD; (b) performing annual tests of the operation of the ALLDs that were installed; and (c) either performing an annual line tightness test on the pressurized piping or else conducting monthly monitoring of the pressurized piping.  Each day of each failure by a defendant to provide for a method of release detection for the pressurized piping is a violation of 40 C.F.R. § 280.41(b).

270.     Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC., 607 STATION ROAD REALTY INC., GULDEN INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, FREEPORT REALTY LLC, 199 E. SUNRISE HIGHWAY REALTY CORP., ELIZABETH NJPO LLC, ELIZABETH NJPG LLC, PERTH AMBOY NJPO LLC and PERTH AMBOY NJPG LLC failed to comply with 40 C.F.R. § 280.41(b)(1)(ii) because they did not provide annual line tightness tests or monthly monitoring of pressurized piping of the UST systems that they own(ed) or operate(d) at the facilities with the following locations:  2664 Route 112, Medford, New York; 607 Station Road, Bellport, New York; 616 Route 110, Amityville, New York; 199 East Sunrise Highway, Freeport, New York; 507 Bayway Avenue, Elizabeth, New Jersey; and 163 Fayette Street, Perth Amboy, New Jersey.

271.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC., 607 STATTION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC,  199 E. SUNRISE HIGHWAY  REALTY  CORP.,  GULDEN INC.,  465 NASSAU ROAD REALTY CORP., KUCUKBEY CORP., ELIZABETH NJPO LLC, ELIZABETH NJPG LLC, PERTH AMBOY NJPO LLC, and PERTH AMBOY NJPG LLC failed to comply with 40 C.F.R § 280.44(a) because they did not conduct annual tests of ALLDs for the underground and pressurized piping of the UST systems that they own(ed) or operate(d) at the facilities located at the following addresses: 2664 Route 112, Medford, New York; 607 Station Road, Bellport, New York; 616 Route 110, Amityville, New York; 6077 Jericho Turnpike, Commack, New York; 199 E. Sunrise Highway, Freeport, New York; 131 West Merrick Road, Freeport, New York; 465 Nassau Road, Roosevelt, New York; 507 Bayway Avenue, Elizabeth, New Jersey; and 163 Fayette Street, Perth Amboy, New Jersey.

272.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP. and CAMLICA, INC. failed to comply with 40 C.F.R § 280.41(b)(1)(i) because they did not equip the USTs they own(ed) or operate(d) that are or were connected to underground piping that conveys(ed) regulated substances under pressure with an automatic line leak detector at the facilities located at 2664 Route 112, Medford New York.

## SIXTH CLAIM FOR RELIEF

### Failure to Maintain Records of Release Detection
(Against Genesis, Technic, the Medford Facility, Bellport Facility, Miller Place Facility, Amityville Facility, Commack Facility, Sunrise Highway Facility, West Merrick Facility, Roosevelt Facility, Newark Facility and North Bergen Facility Defendants)

273.    Paragraphs 1 through 256 are realleged and incorporated herein by reference.

274.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., GULDEN INC., 2664 RT 112 REALTY CORP., 607 STATION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, FREEPORT REALTY LLC, 199 E. SUNRISE HIGHWAY REALTY CORP., 465 NASSAU ROAD REALTY CORP., CAMLICA, INC., KUCUKBEY CORP., NEWARK NJPO LLC, NEWARK NJPG LLC, NORTH BERGEN NJPO LLC, and NORTH BERGEN NJPG LLC were required to maintain and provide records demonstrating compliance with release detection requirements for the new and existing UST systems that they own(ed) or operate(d), and to submit that information to EPA upon request. Each day of each failure by a defendant to maintain and provide records demonstrating compliance with release detection requirements for UST systems and to submit that information to the EPA upon request is a violation of 40 C.F.R. § 280.34 and 40 C.F.R. § 280.45.

275.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., GULDEN INC., 2664 RT 112 REALTY CORP., 607 STATION ROAD REALTY INC., 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, FREEPORT REALTY LLC, 199 E. SUNRISE HIGHWAY REALTY CORP., 465 NASSAU ROAD REALTY CORP., CAMLICA, INC., KUCUKBEY CORP., NEWARK NJPO LLC, NEWARK NJPG LLC, NORTH BERGEN NJPO LLC, and NORTH BERGEN NJPG LLC failed to comply with 40 C.F.R. § 280.34 and 40 C.F.R. § 280.45 because they did not maintain and provide records of release detection for the UST systems that they own(ed) or operate(d) at the facilities located at the following addresses: 2664 Route 112, Medford, New York; 607 Station Road, Bellport, New York; 87 North Country Road, Miller Place, New York; 616 Route 110, Amityville, New York; 6077 Jericho Turnpike, Commack, New York; 199 E. Sunrise Highway, Freeport, New York; 131 West Merrick Road, Freeport, New York; 465 Nassau Road, Roosevelt, New York;  New York; 66

Bloomfield Avenue, Newark, New Jersey; and 8012 Tonnelle Avenue, North Bergen, New Jersey, in violation of 40 C.F.R. §§ 280.34 and 280.45.

## SEVENTH CLAIM FOR RELIEF

### Failure to Continue Release Detection for a Temporarily Closed UST
(Against Genesis, Technic, Gulden and East Merrick Defendants)

276.   Paragraphs 1 through 256 are realleged and incorporated herein by reference.

277.   Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC. and GULDEN INC. were required to have a functioning method of release detection when the USTs at the facility located at 261 East Merrick Road, Freeport, New York, were temporarily closed and contains(ed) more than 2.5 centimeters (one inch) of residue of the regulated substance. Each day of each failure by a defendant to have a functioning method of release detection when these UST facilities were out of service is a violation of 40 C.F.R. § 280.70(a).

278.   Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC. and GULDEN INC. failed to comply with 40 C.F.R. § 280.70(a) because they did not have a functioning method of release detection when the USTs at the facility located at 261 East Merrick Road, Freeport, New York, were out of service.

## EIGHTH CLAIM FOR RELIEF

### Failure to Timely Report a Suspected Release
(Against Genesis, Technic and the Miller Place Facility, Roosevelt Facility and North Bergen Facility Defendants)

279.   Paragraphs 1 through 256 are realleged and incorporated herein by reference.

280.   Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 465 NASSAU ROAD REALTY CORP., NORTH COUNTRY ROAD REALTY LLC, NORTH BERGEN NJPO LLC AND NORTH BERGEN NJPG LLC were required to report to the appropriate implementing agency (the New York State Department of Environmental

Conservation for facilities in New York, the New Jersey Department of Environmental Protection for facilities in New Jersey) suspected releases of regulated substances for the facilities located at the following addresses: 87 North Country Road, Miller Place, New York; 465 Nassau Road, Roosevelt, New York; and 8012 Tonnelle Avenue, North Bergen, New Jersey. Each day of each failure by a defendant to report suspected releases of regulated substances at those facilities is a violation of 40 C.F.R. § 280.50(c).

281.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 465 NASSAU ROAD REALTY CORP., NORTH COUNTRY ROAD REALTY LLC, NORTH BERGEN NJPO LLC AND NORTH BERGEN NJPG LLC failed to comply with the requirements of 40 C.F.R. § 280.50(c) because they did not timely to report to the appropriate implementing agency (the New York State Department of Environmental Conservation for facilities in New York, the New Jersey Department of Environmental Protection for facilities in New Jersey) suspected releases of regulated substances for the facilities located at the following addresses: 87 North Country Road, Miller Place, New York; 465 Nassau Road, Roosevelt, New York; and 8012 Tonnelle Avenue, North Bergen, New Jersey.

### NINTH CLAIM FOR RELIEF

Failure to Use UST System Materials Compatible with the Stored Substances
(Against Genesis, Technic and the 199 E. Sunrise Highway Realty Corp. Defendants)

282.    Paragraphs 1 through 256 are realleged and incorporated herein by reference

283.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., and 199 E. SUNRISE HIGHWAY REALTY CORP. were required to use an UST(s) system made of or lined with materials that would be compatible with the regulated substances that are/were stored in such UST system(s). Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., and 199 E. SUNRISE HIGHWAY REALTY CORP. stored biodiesel in

a fiber reinforced plastic and failed to provide any documentation by the tank's manufacturer certifying compatibility with the stored substance. Each day of each failure by a defendant to use UST system materials compatible with the stored substances is a violation of 40 C.F.R. § 280.32(a).

284.   GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., and 199 E. SUNRISE HIGHWAY REALTY CORP. failed to comply with the requirements of 40 C.F.R. § 280.32(a) because they did not use an UST(s) system made of or lined with materials that are/were compatible with the regulated substances that are/were stored in such UST system(s) at the facility located at 199 E. Sunrise Highway, Freeport, New York.

## TENTH CLAIM FOR RELIEF

Failure to Meet Financial Responsibility Requirements
(Against Genesis, Technic, and the Medford Facility, Bellport Facility, Miller Place Facility, Amityville Facility, Commack Facility, Sunrise Highway Facility, and West Merrick Facility Defendants)

285.   Paragraphs 1 through 256 are realleged and incorporated herein by reference.

286.   Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC., 607 STATION ROAD REALTY INC., NORTH COUNTRY ROAD REALTY LLC, 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, KUCUKBEY CORP., 199 E. SUNRISE HIGHWAY REALTY CORP., FREEPORT REALTY LLC and GULDEN INC. were required to demonstrate financial responsibility for taking corrective action and for compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of the petroleum USTs they own(ed) or operate(d), and to maintain evidence of all financial assurance mechanisms used to demonstrate the financial responsibility for such petroleum USTs located at: located at the following addresses: 2664 Route 112, Medford, New York; 607 Station Road, Bellport, New York;

87 North Country Road, Miller Place, New York; 616 Route 110, Amityville, New York; 6077 Jericho Turnpike, Commack, New York; 199 E. Sunrise Highway, Freeport, New York; 131 West Merrick Road, Freeport, New York; and 261 East Merrick Road, Freeport, New York. Each day of each failure by a defendant to demonstrate financial responsibility for taking corrective action and compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of the petroleum UTs they own(ed) or operate(d), and to maintain evidence of all financial assurance mechanisms used to demonstrate the financial responsibility for such petroleum USTs is a violation of 40 C.F.R. §§ 280.93(a), 280.111, and Part 280, Subpart H.

287.    Defendants GENESIS PETROLEUM, INC., TECHNIC MANAGEMENT, INC., 2664 RT 112 REALTY CORP., CAMLICA, INC., 607 STATION ROAD REALTY INC., NORTH COUNTRY ROAD REALTY LLC, 1000 MOTOR PARKWAY CENTRAL ISLIP LLC, 616 BROADWAY LLC, KUCUKBEY CORP., 199 E. SUNRISE HIGHWAY REALTY CORP., FREEPORT REALTY LLC and GULDEN INC. failed to comply with 40 C.F.R. §§ 280.93(a) and 280.111 because they have not demonstrated financial responsibility for taking corrective action and for compensating third parties for bodily injury and property damage caused by accidental releases arising from the operation of the petroleum USTs they own(ed) and/or operate(d), and they have not maintained evidence of all financial assurance mechanisms used to demonstrate the financial responsibility for such petroleum USTs, as required by 40 C.F.R. Part 280, Subpart H for such petroleum USTs, for such systems located at the following addresses: 2664 Route 112, Medford, New York; 607 Station Road, Bellport, New York; 87 North Country Road, Miller Place, New York; 616 Route 110, Amityville, New York; 6077 Jericho Turnpike, Commack, New York; 199 E. Sunrise Highway, Freeport, New York; 131 West Merrick Road,

Freeport, New York; and 261 East Merrick Road, Freeport, New York.

288.    Pursuant to Sections 9006(a) and (d) of RCRA, 42 U.S.C. §§ 6991e(a) and 6991e(d), respectively, each Defendant is subject to injunctive relief and is liable for civil penalties based on these ten claims for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully prays that this Court grant the following relief:

(a) Enjoin permanently the Defendants to achieve and maintain compliance with all applicable requirements for Subtitle I of RCRA, 42 U.S.C. § 6991 *et seq.,* and its implementing regulations, 40 C.F.R. Part 280, for the USTs (as heretofore mentioned) they continue to own or operate the USTs;

(b) With respect to each day of each violation of RCRA and its 40 C.F.R. Part 280 implementing regulations, at each facility as set forth under each of the 12 claims for relief in this Complaint, order Defendants to pay a civil penalty pursuant to 42 U.S.C. § 6991e(d)(2); and

(c) Award Plaintiff the costs of this action; and

(d) Grant Plaintiff such other and further relief as this Court may deem appropriate.


Dated: Brooklyn, N.Y.                 Respectfully submitted,

                                      RICHARD P. DONOGHUE
June 5, 2019                          United States Attorney
                                      Eastern District of New York
                                      Attorney for Plaintiff
                                      271 Cadman Plaza East
                                      Brooklyn, New York 11201

By:    <u>/s Jolie Apicella           </u>
JOLIE APICELLA
Assistant U.S. Attorney
718-254-6528
jolie.apicella@usdoj.gov

ELLEN M. MAHAN
Deputy Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

Of Counsel:

LEE A. SPIELMANN
Office of Regional Counsel
U.S. Environmental Protection Agency,
      Region 2